UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BARRY CARRELL,

        Petitioner,

vs.    Case No. 3:18-cv-1201-BJD-JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

## ORDER

### I.  INTRODUCTION

Petitioner Barry Carrell, proceeding pro se, initiated this case by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody (Petition) (Doc. 1) and a Memorandum of Law (Memorandum) (Doc. 2). He challenges his state court (Duval County) conviction for third degree murder (count one), attempted second degree murder (count two), aggravated assault with a deadly weapon (count 3), aggravated assault with a deadly weapon (count four), and shooting or throwing deadly missiles (count five). Petition at 1. He raises three grounds in the Petition:[1]  (1) "testimony

---

[1] Curiously, Petitioner's Memorandum references four grounds, not three. Memorandum at 8, 11, 16, 20. Apparently, in the Memorandum, Petitioner divided ground one of the

against Petitioner was illegally obtained through threats Petitioner raised this claim as newly discovered evidence based on an affidavit recanting testimony affirming that testimony was given through prosecutor threats state court summarily denied without first conducting an evidentiary hearing as required[;]" (2) "fundamental jury instruction error where trial court improperly instructed jury that attempted manslaughter by act included the erroneous element of 'intent to kill'[;]" and (3) "Appellant's sentence for shooting deadly missiles, which exceeds the statutory maximum, violated Petitioner's Sixth and Fourteenth Amendment rights under the U.S. Constitution and Section 16 of Florida's Constitution."  Id. at 5, 7, 8 (capitalization omitted).

Concerning timeliness of the Petition, Petitioner asserts the "signing of an affidavit alleging newly discovered evidence constitutes the start date for timeliness under AEDPA." Id. at 13.  Thus, he contends the Petition is timely filed. Id. at 14.  Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely (Response) (Doc. 6), asserting the federal

---

Petition into two grounds.  Ground three of the Memorandum is ground two of the Petition. Ground four of the Memorandum is ground three of the Petition.  For clarity, the Court will refer to the grounds as presented in the Petition.

2

petition is untimely filed and due to be dismissed.² Petitioner filed a Response to the Respondents' Motion to Dismiss (Reply) (Doc. 8).³

## II. TIMELINESS

Respondents assert the Petition is untimely. Response at 8. Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a one-year period of limitation:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

2 Respondents filed Exhibits (Doc. 6), hereafter referred to as "Ex." In this opinion, the Court references the page numbers on the exhibits.

3 With respect to the Petition, Memorandum, Response, and Reply, the Court will refer to the page numbers assigned by the electronic filing system.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Pursuant to AEDPA, effective April 24, 1996, Petitioner had one-year to file a timely federal petition pursuant to 28 U.S.C. § 2254. Wilcox v. Fla. Dep't of Corr., 158 F.3d 1209, 1211 (11th Cir. 1998) (per curiam) (one-year from date of enactment is adopted for convictions that became final prior to the effective date of AEDPA), cert. denied, 531 U.S. 840 (2000); see Guenther v. Holt, 173 F.3d 1328, 1331 (11th Cir. 1999), cert. denied, 528 U.S. 1058 (2000) (same). Review of the record shows Petitioner failed to comply with the limitation period described above.

After judgment and conviction, Petitioner appealed to the First District Court of Appeal (1st DCA). Ex. A at 393; Ex. D; Ex. E; Ex. F. On August 16, 2011, the 1st DCA affirmed per curiam. Ex. G. The mandate issued September 1, 2011. Id. The conviction became final on Monday, November 14, 2011 (90 days after August 16, 2011) (According to rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate

4

court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion."). The limitation period began running the following day, Tuesday, November 15, 2011, and ran for a period of 290 days, until Petitioner, through counsel, filed an initial Rule 3.850 motion for post-conviction relief on August 31, 2012. Ex. H at 1-203. Petitioner also filed an amended and second amended Rule 3.850 motion. Id. at 204-234, 235-56. The trial court denied the motions for post-conviction relief on October 9, 2015. Id. at 290-507. Petitioner appealed the denial of his post-conviction motion. Id. at 508; Ex. N. The 1st DCA affirmed per curiam. Ex. O. The mandate issued on Tuesday, April 5, 2016.[4] The limitation period began to run again on Wednesday, April 6, 2016, and expired seventy-five days later, on Monday, June 20, 2016.

Petitioner did not file his federal Petition until October 4, 2018, well past the expiration of the one-year limitation period. Although on June 2, 2016, Petitioner filed a successive Rule 3.850 motion, the state court found it to be untimely and procedurally barred. Ex. P, Order Denying Defendant's Successive Motion for Postconviction Relief (Order). The trial court found the

---

4 Meanwhile, on May 31, 2013, Petitioner, through counsel, filed a state petition for writ of habeas corpus. Ex. I. The 1st DCA denied the petition on October 24, 2013. Ex. K. Petitioner sought rehearing, and the 1st DCA, on December 3, 2013, denied rehearing. Ex. L; Ex. M.

facts could have been ascertained by Petitioner or his counsel, and the failure to discover the facts was due to want of diligence of the complaining party. See Jones v. Sec'y, Fla. Dep't of Corr., 906 F.3d 1339, 1350 (11th Cir. 2018) (concluding untimeliness finding subsumed within denial of relief because the petitioner could have discovered the evidence), cert. denied, 139 S. Ct. 1384 (2019). As Petitioner's successive Rule 3.850 motion was untimely under Florida law, his motion was not properly filed pursuant to AEDPA's tolling provision, and, therefore, his Petition is time-barred.

Based on the history outlined above, the Petition filed on Thursday, October 4, 2018 is untimely and due to be dismissed unless Petitioner can establish that his June 2, 2016 Successive 3.850 motion, claiming newly discovered evidence, re-started the one-year limitation period, or that he can establish equitable tolling of the statute of limitations is warranted. Petitioner, in his Reply, asserts equitable tolling is warranted. Reply at 3-8.

Of import, Florida law provides for an exception to the general rule a defendant must file his motion for post-conviction relief in a non-capital case within two years of the date on which the judgment and sentence became final. Rule 3.850(b), Fla. R. Crim. P. An exception to the two-year time bar is the discovery of new evidence, the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been

6

ascertained by the exercise of due diligence. Rule 3.850(b)(1). Under this exception, the claim must be made within two years of the time the new facts were or could have been discovered with the exercise of due diligence. Id. See Smith v. State, 990 So. 2d 1199, 1205 (Fla. 5th DCA 2008) (amending the initial Rule 3.850 motion prior to resolution of the motion is the better practice); Jones v. State, 591 So. 2d 911, 913 (Fla. 1991) (per curiam) ("allegations of newly discovered evidence fall within the exception to the two-year requirement of rule 3.850"); Blake v. State, 152 So. 3d 66, 68 (Fla. 2nd DCA 2014) (per curiam) ("A claim of newly discovered evidence can be an exception to the two-year time limitation in Rule 3.850(b).").

As noted by Respondents, in his successive Rule 3.850 motion, Ex. Q, Petitioner claims Ms. Melanie Peoples, formerly Melanie Berry-Ayala, recanted her trial testimony because she was not provided with notice that her testimony was being used for the State Attorney's Office and against Petitioner, and she had been tacitly and expressly threatened in order to gain her cooperation with the State Attorney's Office. See Response at 6. Petitioner also raised an issue concerning manslaughter jury instructions, previously raised in claims seven and eight of the original Rule 3.850 motion, and a sentencing issue, previously raised in claim nine of the original Rule 3.850 motion. Id.

7

In denying the successive Rule 3.850 motion, the circuit court first found the successive motion untimely as it was filed more than two years after the judgment and sentence became final. Ex. P, Order at 2. The court recognized Petitioner raised a two-fold claim of "newly discovered evidence of a witness' recantation of trial testimony coupled with a Brady[5] violation." Id. The court inquired as to whether this constituted newly discovered evidence, citing Jones v. State, 591 So. 2d at 915 (referencing a two-part test that the evidence must have been unknown by the trial court, the party, or by counsel at the time of trial, and it must appear that the defense could not have known of it by the use of diligence, and the newly discovered evidence must be of such nature it would probably produce an acquittal on retrial). Ex. P, Order at 3. Applying the two-part test, the circuit court found the alleged recantation or the state's alleged threatening of Ms. Berry did not constitute newly discovered evidence. Id. at 4. The court opined:

> Initially, this Court notes that the State calling Ms. Berry as a witness during its case-in-chief did not prevent Defendant from calling Ms. Berry during his case-in-chief. Further, counsel's inability to impeach Ms. Berry with the State's alleged threatening tactics did not affect the outcome of the case. Notwithstanding Ms. Berry's trial testimony, the evidence produced at trial shows: Defendant left the altercation inside the Waffle House restaurant;

---

5 Brady v. Maryland, 373 U.S. 83 (1963).

8

> Defendant went to his vehicle and obtained a gun; and Defendant returned to the altercation where he fired several rounds of bullets at the two victims and bystanders.

Id. (citation omitted).

In making its decision, the court reviewed the testimony presented at trial. Id. at 4-7. The court concluded, even assuming recantation by Ms. Berry or "potential impeachment toward Ms. Berry[,]" Petitioner cannot show such evidence would have resulted in a different outcome. Id. at 7. The court reached this conclusion noting any misconduct by the state in procuring Ms. Berry's testimony "would not affect or impeach the trial testimony of other witnesses." Id. Also, assuming *arguendo* Ms. Berry would have testified Petitioner acted in self-defense, the court found this purported testimony was contradicted by Ms. Veasey and Mr. Hunt's eyewitness testimony. Id. Furthermore, as defense witnesses testified Petitioner acted in self-defense, the reviewing court found Ms. Berry's purported testimony would have been cumulative. Id. Finally, the court opined, the jury heard evidence Petitioner acted in self-defense, "but rejected said evidence in consideration of the evidence as a whole." Id.

The court also considered the claim of a Brady violation, finding Petitioner failed to satisfy the second and third prongs to establish a Brady

9

claim (in establishing a Brady claim, a defendant is required to show (1) favorable evidence, exculpatory or impeaching; (2) which was willfully or inadvertently suppressed by the state; and (3) because the evidence was material, the defendant suffered prejudice). First, and foremost, the court concluded "the alleged impeachment evidence was equally accessible to defense counsel and could have been obtained through the exercise of reasonable diligence." Ex. P, Order at 8.

The record shows the following. Ms. Berry called defense counsel, Mr. Boston, so defense counsel knew Ms. Berry was reluctant to speak to the prosecutor, but Mr. Boston informed Ms. Berry she should comply with the demands of the police department and the State Attorney's Office to speak on the record. Id. See Ex. Q at 71. Additionally, the state had listed Ms. Berry as a category A witness. Ex. A at 37. In the State's First Supplemental Discovery Exhibit, Ms. Berry's sworn statements are listed as exhibits. Id. at 40. Of import, the record shows the defense listed Ms. Berry as a witness. Id. at 187-88. Certainly, defense counsel could have deposed Ms. Berry and fleshed out her concerns and inquired as to her state of mind when she gave her statements, called Ms. Berry in the defense's case-in-chief, or asked poignant questions on cross-examination at trial.

Notably, these actions could have occurred prior to trial, during trial, "or [at] least, during the pendency of [Petitioner's] initial state postconviction proceeding."[6] See Response at 14. The record is clear Ms. Berry was present during the incident, she was arrested with Petitioner on the night of the offense, defense counsel knew the state was seeking to obtain Ms. Berry's statements, and after the initial two statements, she was reluctant to talk to the Assistant State Attorney, but the State Attorney obtained another statement from Ms. Berry after she contacted defense counsel. Ex. A at 2, 56-111.

Finally, and most importantly, the circuit court concluded the evidence would not have affected the outcome of the trial, opining there was overwhelming evidence of guilt, showing Petitioner did not act in self-defense. Ex. P, Order at 8. "As such, Defendant cannot show that but for counsel's inability to impeach Ms. Berry with the State's alleged improper procurement of her as a witness, he would have been acquitted." Id. at 8-9.

As to the second claim of the successive Rule 3.850 motion, concerning the jury instructions regarding manslaughter, the circuit court found the claim untimely, or, alternatively, procedurally barred as the claim was previously

---

6 Any impediment to contacting the state's witnesses would have ended after the trial. Response at 16-17.

denied on its merits.[7]  Id. at 9-10.  As to the third claim of the motion, the circuit court denied the claim, noting a comparable claim was previously raised in the original 3.850 motion and rejected.[8]  Id. at 11.

The 1st DCA affirmed the circuit court's order denying Defendant's Requested Belated Successive 3.850 Motion.  Ex. T.  The mandate issued on May 23, 2018.  Id.

Upon review, the evidence at issue does not qualify as newly discovered, "[t]hat is, the asserted facts 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence.'"  Jones v. State, 591 So.2d at 916 (quoting Hallman v. State, 371 So.2d 482, 485 (Fla. 1979)).  With the use of reasonable diligence, the evidence could have been ascertained.  As such, the failure to discover the facts was due to want of

---

[7] Petitioner contends he could not have known at his 2009 trial about the future opinion in Griffin v. State, 160 So. 3d 63 (Fla. 2015), decided on March 12, 2015, which Petitioner avers drastically changed the law concerning jury instructions on manslaughter.  Reply at 18.  Of note, the Griffin decision came down while Petitioner's initial Rule 3.850 was pending in the trial court (denied October 9, 2015), thus, amending the initial Rule 3.850 motion or providing supplemental authority prior to resolution of the motion would have prompted the court's consideration of Griffin in resolving the claim.

[8] Petitioner relies on the decision in Plott v. State, 148 So. 3d 90 (Fla 2014), decided on September 18, 2014, to support his contention that his claim is timely.  Of import, this decision came down before the trial court rendered its decision on Petitioner's original Rule 3.850 motion, thus, amending the initial Rule 3.850 motion or providing supplemental authority prior to resolution of the motion would have prompted the court's consideration of Plott in resolving the claim.

12

diligence; therefore, Petitioner failed to reach the threshold requirements for filing a timely motion (an exception to the two-year time bar is the discovery of new evidence, the facts on which the claim is predicated were unknown to the movant and could not have been ascertained by the exercise of due diligence).

The next inquiry this Court must make is whether equitable tolling of the statute of limitations is warranted. Petitioner asserts he never received the 1st DCA's May 2, 2018 opinion or the May 23, 2018 mandate informing him of the affirmance of the denial of his successive Rule 3.850 motion. Reply at 3. This contention will not win the day. As noted above, Petitioner's successive Rule 3.850 motion did not serve to toll the federal one-year limitation period. As it was untimely under Florida law, his successive motion was not properly filed and could not toll the limitation period.

Based on the record before the Court, Petitioner has not presented any justifiable reason why the dictates of the one-year limitation period should not be imposed upon him. Petitioner has failed to show an extraordinary circumstance, and he has not met the burden of showing that equitable tolling is warranted. In order to be entitled to equitable tolling a petitioner is required to demonstrate two criteria: 1) the diligent pursuit of his rights and (2) some extraordinary circumstance that stood in his way and that prevented

timely filing. Agnew v. Florida, No. 16-14451-CIV-MARTINEZ/LYNCH, 2017 WL 962489, at *5 (S.D. Fla. Feb. 1, 2017) (not reported in F. Supp.), report and recommendation adopted by 2017 WL 962486 (S.D. Fla. Feb. 22, 2017). It is the petitioner's burden of persuasion, and this Petitioner has not met this burden.

The record demonstrates Petitioner had ample time to exhaust state remedies and prepare and file a federal petition. Petitioner has not shown that extraordinary circumstances stood in his way and prevented him from timely filing the Petition. Furthermore, he has not shown he exercised due diligence. Focusing its inquiry on the circumstances surrounding Petitioner's late filing of the Petition, this pro se Petitioner is not excused from complying with the time constraints for filing a federal petition.

Upon review, Petitioner does not claim actual innocence.[9] Although, actual innocence may provide a gateway for a § 2254 petitioner to obtain a decision on the merits for an otherwise time-barred claim, "[w]ith the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected." Snodgrass v. Sec'y, Fla. Dep't of Corr., No. 3:15-cv-754-

---

9 In undertaking its review of the case, the Court has reviewed the entire record before the Court, including pleadings, appendices, and exhibits. Although voluminous, the record is bereft of any new evidence probative of actual innocence.

J-32PDB, 2018 WL 4145930, at *4 (M.D. Fla. Aug. 30, 2018) (not reported in F. Supp.) (citing Schlup v. Delo, 513 U.S. 298 324 (1995)). To the extent Petitioner is attempting to raise a claim of actual innocence, he has failed to make a credible showing of actual innocence with new evidence that was not available at the time of his trial.[10]  He has not shown that it is more likely than not that no reasonable juror would have convicted him in light of new evidence.

Indeed, "the basic facts of the evidence existed at the time of trial and is not really new."  Kuenzel v. Allen, 880 F.Supp.2d 1205, 1218 (N.D. Ala. 2011). Petitioner has not made a credible showing of actual innocence as he has not offered new evidence that is directly probative of his innocence (DNA evidence, forensic evidence, alibi evidence, or a confession).  Petitioner has not presented this Court with new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.  Petitioner is required to

---

10 To invoke the fundamental miscarriage of justice exception, a petitioner must present new evidence that was not available at the time of trial, and it must be "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  Schlup, 513 U.S. at 324.  Petitioner has not made a credible showing of actual innocence with new evidence that was not available at the time of his trial.  See McQuiggin v. Perkins, 569 U.S. 383, 392-93 (2013).  Notably, the McQuiggin exception is applicable only if a petitioner presents evidence of innocence so strong it convinces the court that "no reasonable juror would vote to find him guilty."  Creel v. Daniels, No. 5-16-cv-00803-LSC-JEO, 2018 WL 2187797, at *4 (N.D. Ala. April 12, 2018) (not reported in F. Supp.), report and recommendation adopted by 2018 WL 2184543 (N.D. Ala. May 11, 2018).  As Petitioner has failed to come forward with any new reliable evidence of innocence, he has not met the difficult standard set forth in Schlup and its progeny.

show 'factual innocence" not legal insufficiency.  Kropa v. Sec'y, Dep't of Corr., No. 8:16-CV-2612-T-27MAP, 2017 WL 354103, at *3 (M.D. Fla. Jan. 23, 2017) (not reported in F. Supp.).  In failing to make a credible showing of actual innocence, Petitioner has failed to provide a gateway to obtain a decision on the merits.

Because Petitioner has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him, this case will be dismissed with prejudice as untimely.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) and the case are **DISMISSED with prejudice.**

2. The **Clerk** shall enter judgment dismissing the Petition with prejudice and dismissing the case with prejudice.

3. The **Clerk** shall close the case.

4. If Petitioner appeals the dismissal of the Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**.[11]

---

[11] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of March, 2021.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/12
c:
Barry Carrell
Counsel of Record

---

that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.